David Domingo, Mateo-Pedro. Your Honor, I was preparing this case this morning and last night. First off, this is a simple case. I've represented many asylum seekers from Guatemala. Of course, I've heard hundreds of these cases. And I just got mad at myself for thinking this, because it's not a simple case. This is a case where four generations of family were terribly harmed, were persecuted. These people weren't just civilian casualties, typical of a civil war. They weren't collateral damage. These are targeted, intended victims of persecution, including the petitioner's two uncles who were killed, his father's uncle was killed, his father who was arrested and tortured for 20 days, his father's grandparents who were murdered after he escaped in the government came looking for him. And petitioner himself, who was just 13 years old when he was kidnapped and held for several years by guerrillas. Yeah, but the different groups did different things. I mean, terrible things happened to his family from the government. And then the guerrillas kidnapped him. But can you put those two things together? Well, I think they're put together based on this whole conflict in this northwestern area of Guatemala called Huevitanga. Well, it's a bad scene, but, you know, we have a statutory scheme that says you have to be persecuted on account of political opinion. Where was he persecuted? What? Or membership in a particular social group. Are you claiming the family as the social group? The family and his ethnicity. But then again, if it's a social group, it's attacks by different bodies from different points of view. The personal attack on him is not because he's a member of the family. They just want him to work with the guerrillas and cook for them. I believe the testimony in the trial was that the guerrillas came looking for his father. I don't know. OK, but presumably they must have thought he was on their side. And then when they didn't find his father, they took him. They took him. But is that persecution? It seems to be recruitment. Well, it could be recruitment or it could be persecution. Were they coming to... All right, if it could be one or the other, we have to go with the board. And then... Why don't you separate it out? Because there's sort of, as Judge Noonan has said, there are really two different theories operating here, it seems to me. One theory is his family was persecuted by the government because the government thought, for a putrid opinion, they thought they were aligned with the guerrillas. But there's no past persecution based on that in this record to your client. Yes. So it seems to me your theory on that is that that alone constitutes a well-founded fear of returning without the presumption of past persecution. That's one theory. Your other theory, it seems to me, is that there was past persecution by the guerrillas, a group that the government was unable to control. And then the question on that is whether or not it was on account of a political opinion. And then given that presumption, if that's the case, is there a well-founded fear when he returns that the guerrillas will go after him again? So why don't you address basically the two different aspects of your case and tell us why you think relief is entitled under either one of those? Let's take the first one, the family persecution, because I don't think you've got the presumption there. So what's the best evidence you have in the record that there's a well-founded fear of persecution by the government if he returns on account of an imputed opinion? In fact, the government soldiers searched for his father who had escaped. His father was hiding in his grandparents' home. The soldiers came, murdered his grandparents. Father fled Guatemala, came to the United States. Father testified at the trial. Petitioner who was about 13 years old at the time, excuse me, yes, about 13 years old at the time, has now, after being kidnapped and then escaping from the guerrillas, left Guatemala. Reasonably fears that if he goes home, either side will harm him. Now specifically with regard to the first claim, he does fear the soldiers. He's seen the men in his family wiped out for three generations older than him. I grant you the subjective prong of that. What about the objective prong? Objectively, there's still conflict in Guatemala, not to the level of the Civil War, but the State Department Human Rights Report showed that there are still murders. There's still human rights abuses. There's still violence often perpetrated by what appears to be the remnants of a civil patrol or former civil patrol members or existing civil patrol soldiers who are still murdering people who are still at large after committing massive human rights abuses. So there's still a state of country having terrible human rights records. And often, Guatemalans living in the United States are, in general, terrified of returning to Guatemala, especially somebody that age, 13 years old, when these things happen to them, not lived there since he was 16 in his experience. I'm going to withdraw that. That is addressing the subjective prong of asylum. Objectively, I think the record shows from the State Department, though, that there is still a large degree of violence in Guatemala. What about the second theory, which I guess is that he suffered past persecution by the guerrillas? Kidnapping, I think, certainly is persecution. What's in the record that shows it was on account of his political opinion? Your Honor, I would acknowledge that the record doesn't show that. The record shows that the guerrillas had sought his father and not find him. They took him. I don't think the record establishes that it was either on account of political opinion or that it was merely recruitment. But I think, conjoined with what's happened to the other men in his family, he has a reasonable fear, based on objective facts, of persecution on account of his membership in a particular social group. Thank you. I'll save you some time for rebuttal. Yes. Good morning again, Counsel. All right. As the Court has pointed out, there are two separate issues in this case. There is a question of past persecution, whether his treatment by the guerrillas constituted past persecution. And the second issue is whether or not he established that he had a well-founded fear of persecution on account of his family contacts by the government. The incidents that happened with the guerrillas, although it was kidnapping and he was held for three years, there's nothing in the record that indicates that he was kidnapped on account of his political opinion or imputed political opinion. When he was asked on the record why the guerrillas took him, he says, I don't know. And there is nothing else in the record that would indicate that the guerrillas decided to take him on account of a political opinion or imputed political opinion. Therefore, although his treatment was horrendous and it was not right, it was not persecution on account of a protected ground. If we move to the question of whether the treatment of his family by the government amounted to past persecution of Mateo Pedro, that's not true. There's nothing in the record that shows that the government targeted Mr. Mateo Pedro himself. I don't think he's claiming past persecution. What he's claiming is a well-founded, purely a well-founded fear without the presumption of past persecution on this particular part of his argument. I was just trying to say that there is no need to rebut a finding of past persecution on account of this family background. So there's no actual past persecution. It is just a well-founded fear. And when you go to a well-founded fear of persecution, again, the immigration judge looks at the entire record to see whether or not the person has established a well-founded fear. In this case, country condition reports are key. The Department of State country condition report, again, the same one as in INS Ventura, said that as far as government searching out to persecute people based on political opinion, in our experience, quotation from the report, only party leaders or high-profile activists generally would be vulnerable to such harassment and usually only in their home communities. There is nothing in the record to support a well-founded fear of persecution on account of his family membership, especially since every single person of his family who remained in Guatemala that would have the same imputed political opinion on account of family membership has not been harmed. Mr. Mateo Pedro himself, when asked first why he would fear going back to Guatemala, he said, well, I don't have any identifying documents, so I'd have a hard time. Only after... Well, I can imagine why he wouldn't want to return. I mean, it's a horrible situation. But not having documents is not... No, I mean... Grants for a basis of a well-founded fear. Yeah. And if there's any other questions... Okay. The government requests that the Honorable Court find the record does not compel a finding that Mr. Mateo Pedro established past persecution on account of his political opinion with the guerrillas or a well-founded fear of future persecution on account of his family membership and therefore affirm the agency decision denying asylum and withholding of removal and deny the petition for review. Thank you, Counsel. The bottom? Okay, thanks. Thank you both for your arguments. The case record will be submitted, and we'll proceed to the next case on the calendar, which is Antonio Francisco v. Ashcroft. Thank you.
judges: Noonan, Thomas, Bea